918 F.2d 225
 32 ERC 1350, 287 U.S.App.D.C. 19
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
ETHYL CORPORATION, Petitioner,
v.
ENVIRONMENTAL PROTECTION AGENCY and William K. Reilly,
Administrator, Environmental Protection Agency, Respondents.
 No. 90-1004.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 28, 1990.
 
 Before RUTH BADER GINSBURG, SILBERMAN and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the petition for review of a regulation of the Environmental Protection Agency, and was briefed and argued by counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.R. 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the court, that the petition for review be denied in part, and the case remanded to the Environmental Protection Agency for further proceedings.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15.
 
 MEMORANDUM
 
 4
 Ethyl Corporation petitions this court for review of an Environmental Protection Agency final rule regulating certain materials generated during the production of methyl bromide as hazardous wastes. During the course of these proceedings, EPA issued a stay in regard to some of the listed wastes but continued its regulation of the others. For the reasons set forth below, we remand this case to EPA for further consideration of those wastes to which the stay applies, and deny Ethyl's petition in regard to the remaining wastes.
 
 I.
 
 5
 After a rulemaking proceeding, in which Ethyl participated, EPA issued a final rule in October 1989, with respect to certain wastes produced in the manufacturing of methyl bromide. 54 Fed.Reg. 41,402. The wastes designated as hazardous were identified as K131 (wastewater from the reactor and acid drier from the production of methyl bromide), and K132 (spent adsorbent and wastewater separator solids from the production of methyl bromide). Id.
 
 
 6
 The Resource Conservation and Recovery Act of 1976 ("RCRA"), as amended, 42 U.S.C. Secs. 6901-6933, grants EPA authority to regulate solid and hazardous wastes. See Solid Waste Disposal Act Amendments of 1980, Pub.L. No. 96-482, 94 Stat. 2334; Hazardous and Solid Waste Amendments of 1984, Pub.L. No. 98-616, 98 Stat. 3221. Under the RCRA, "hazardous wastes" are defined as a subset of "solid wastes," which are in turn defined to include only products that are actually discarded. As interpreted by this court, EPA's authority does not extend to materials that are recycled in a continuous process of production. See American Mining Congress v. EPA, 824 F.2d 1177, 1185-86 (D.C.Cir.1987).
 
 
 7
 Ethyl claims that EPA improperly listed two items, TBBPA product slurry and byproduct brine, as hazardous waste K131. Ethyl argues that EPA did not adequately understand its patented coproduction process and, as a result, erroneously concluded that these products were discarded wastes. According to Ethyl, the TBBPA slurry is a commercially useful product that is neither discarded nor a waste, and the byproduct brine is immediately recycled in the bromine production operation. Because bromine is recycled out of the byproduct brine, Ethyl contends that its production process does not generate "solid wastes" within the meaning of the RCRA.
 
 
 8
 On October 22, 1990, the Administrator of EPA issued a limited stay with respect to its listing of reactor wastewater K131 generated in Ethyl Corporation's methyl bromide production facility. EPA's purpose in issuing the stay was "to supplement the Record with additional data concerning the process stream from Ethyl's reactor, for purposes of evaluating that process stream and determining whether it contains a solid waste and, if so, whether it is eligible for an exemption or variance."
 
 
 9
 Through this stay, EPA has in effect agreed to reassess the issue whether the TBBPA product slurry and the byproduct brine should properly be considered "solid wastes" within the meaning of section 1004(27) of the RCRA, 42 U.S.C. Sec. 6903(27). We therefore remand this portion of the case to EPA for that purpose.
 
 II.
 
 10
 Because "the stay does not apply to spent sulfuric acid from the acid dryer or to K132 waste (spent absorbent [sic] and wastewater separator solids from the production of methyl bromide)," we must consider Ethyl's additional contention that EPA acted arbitrarily and capriciously in listing these material streams as hazardous. These streams include spent alumina adsorbent, spent sulfuric acid, and wastewater separator solids.
 
 
 11
 Ethyl acknowledges that it uses alumina adsorbent and sulfuric acid, and that these products are ultimately discarded. They are thus "solid wastes" subject to EPA regulation. Ethyl claims, however, that before the alumina is landfilled, and before the sulfuric acid is returned to the supplier for reclamation, they are stripped to remove traces of methyl bromide. In its comments, Ethyl submitted a report purportedly showing that these product streams contained very low levels of methyl bromide. Ethyl contends that EPA improperly rejected this evidence when it listed these materials as hazardous. EPA counters that Ethyl's report contained insufficient evidence that the methyl bromide had been adequately removed and failed to reveal the method of analysis Ethyl employed in arriving at its conclusions.
 
 
 12
 Ethyl's main argument is that EPA did not adequately respond to its data. But EPA need not refute every piece of evidence presented by a commenter. Indeed, it is required to issue a detailed response only to comments that would demand a change in the rule if the comments were accurate. American Mining Congress v. EPA, 907 F.2d 1179, 1188 (D.C.Cir.1990). Here we find EPA's response sufficient. Ethyl's data, even if accurate, would not have required EPA to alter its rule. Instead, Ethyl was in effect seeking an exemption from the rule. Ethyl never objected to EPA's regulation of methyl bromide in solid wastes, including spent alumina adsorbent and spent sulfuric acid. It claimed that its particular production process sufficiently cleansed these wastes of their toxic components, so that an application of the rule would be arbitrary and capricious. If, as in this case, "the nature of relief [ ] sought [is] in substance a waiver, not a general rule," then "this factor alone would make it extremely difficult to categorize the agency's failure to respond as 'arbitrary and capricious.' " American Civil Liberties Union v. FCC, 823 F.2d 1554, 1581 (D.C.Cir.1987) (citing Home Box Office, Inc. v. FCC, 567 F.2d 9, 35 n. 58 (D.C.Cir.1977)).
 
 
 13
 Ethyl's production amounts to less than 17% of the total of methyl bromide produced in this country. There are, at the moment, only two producers. To set aside the rule because of Ethyl's particular method of production would leave the other producer--who does not complain--unregulated. In these circumstances, the proper course is for Ethyl to submit a delisting petition pursuant to 40 C.F.R. Secs. 260.20 and 260.22 (1989). That is what EPA stated in response to Ethyl's comments. 54 Fed.Reg. at 41,404.
 
 
 14
 Finally, Ethyl complains that its phenolic polymer waste fits within the EPA's proposed definition of waste K132: "wastewater separator solids from the production of methyl bromide." While Ethyl submitted to EPA the patent describing the treatment of its reactor wastewater, Ethyl furnished nothing further to establish that its polymerized landfill should escape regulation. In view of Ethyl's failure to comment on the proposed rule's application to its polymer waste, we cannot fault the agency for failing to exempt this material in its final rule. If EPA does intend to regulate Ethyl's phenolic polymer waste under the K132 listing, the proper remedy would again be a delisting petition pursuant to 40 C.F.R. Sec. 260.22.
 
 
 15
 For these reasons, we deny Ethyl's petition for review with respect to spent alumina adsorbent, spent sulfuric acid, and wastewater separator solids.